UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Carl McKinley,

        Plaintiff,

v.

CSC Credit Services, Inc. and
SR Financial Services,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 05-2340 ADM/JJG

_____

Thomas J. Lyons, Jr., Esq. and Andre E. Best, Esq., Consumer Justice Center, P.A., Vadnais Heights, MN, on behalf of Plaintiff.

Charles F. Webber, Esq. and Jana M. Viramontes, Esq., Faegre & Benson LLP, Minneapolis, MN, on behalf of Defendant CSC Credit Services, Inc.

_____

## I. INTRODUCTION

On February 14, 2007, oral argument before the undersigned United States District Judge was heard on Defendant CSC Credit Services, Inc.'s ("CSC") Motion for Summary Judgment [Docket No. 16]. In his Complaint [Docket No. 1], Plaintiff Carl McKinley ("McKinley") alleges claims for violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681e(b), 1681i, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et. seq.*, against CSC and Defendant SR Financial Services ("SR Financial").[1] For the reasons set forth herein, CSC's Motion for Summary Judgment is granted.

## II. BACKGROUND

Carl McKinley is a mortgage loan officer with Minnesota Home Mortgage in Lilydale,

---

[1] Plaintiff's FDCPA claim is alleged only against Defendant SR Financial. Plaintiff did not serve process on SR Financial, and SR Financial has not appeared in these proceedings.

Minnesota.  McKinley Dep. (Def.'s Ex. 10 [Docket No. 19]; Lyons Aff. [Docket No. 27] Ex. A [Docket No. 24])[2] at 8.  Prior to working for Minnesota Home Mortgage, McKinley was a mortgage loan officer with Water Street Mortgage in Minnetonka, Minnesota.  Id. at 9. McKinley has over three years experience in the mortgage industry.  First McKinley Aff. (Lyons Aff. Ex. D) ¶ 2.  In Spring 2005, McKinley decided to invest in rental property.  McKinley Dep. at 25.  In preparation, McKinley obtained his tri-merge credit report.  Id. at 26.  A tri-merge credit report includes credit reports from all three major credit reporting bureaus: Equifax,[3] Trans Union, and Experian.  Id.; see Lyons Aff. Ex. E.  Through his position at Water Street Mortgage, McKinley was able to access his own report.  McKinley Dep. at 26.  Upon accessing his report, McKinley discovered that Equifax was reporting that McKinley had a Chevy Chase Bank account that was in collection with SR Financial ("SR Financial account").[4]  Id.; Def.'s Ex. 4; Lyons Aff. Ex. K.  Experian and Trans Union were not reporting the SR Financial account. McKinley Dep. at 28.  McKinley avers that he was shocked to discover the negative report, and believed he had paid off the Chevy Chase account years ago.  Id. at 26; Compl. ¶¶ 6-7.

In May 2005, McKinley sent a "Notice of Credit Dispute" letter to Equifax.  Def.'s Ex. 4; Lyons Aff. Ex. K; McKinley Dep. at 28.  In the letter, McKinley disputed the SR Financial account on the grounds that: (1) "This [account] has been closed more than 7 years;" (2) "This account has been paid;" and (3) "This account is not mine."  Def.'s Ex. 4; Lyons Aff. Ex. K;

---

[2] All exhibits to the Lyons Affidavit can be found at Docket Number 24 and all of CSC's exhibits can be found at Docket Number 19.

[3] Equifax and CSC are consumer reporting agencies.  Fogleman Decl. (Def.'s Ex. 11) ¶ 2. CSC is an Equifax affiliate.  Def.'s Ex. 6.  CSC and Equifax are separate corporations but share the same database.  Fogleman Decl. ¶ 3.

[4] SR Financial is a debt collection agency.

McKinley Dep. at 28-29.  On June 2, 2005, Equifax/CSC sent a form known as an "Automated Consumer Dispute Verification" ("ACDV") form to SR Financial reporting McKinley's dispute.  Def.'s Ex. 5.  CSC/Equifax listed on the ACDV form McKinley's basis for the dispute as "Not His/Hers.  Please Provide Complete ID.  Balance is Paid in Full."  Id.  On June 23, 2005, SR Financial responded that according to its records, the SR Financial collection account belonged to McKinley and was being reported accurately.  Fogleman Decl. ¶ 19.  Based on this information, CSC continued to report the SR Financial account.  Id. ¶ 20.

Also on June 23, 2005, CSC wrote McKinley to inform him that its investigation of the SR Financial account was complete, the creditor had verified that the SR Financial account belonged to McKinley, and the creditor had verified that the account had not been paid in full.  Def.'s Ex. 6.  The letter also explained that if McKinley disagreed with the verification, he could send CSC a statement explaining the nature of the dispute, which would become part of his credit report.  Id.  McKinley was upset that the SR Financial account remained on his credit report.  McKinley Dep. at 35.  McKinley consulted an attorney.  Id.

In July 2005, McKinley sent a second "Notice of Credit Dispute" letter to CSC.  Def.'s Ex. 7; Lyons Aff. Ex. L.  McKinley noted that he again disputed the SR Financial account "on the basis that the account has been paid."  Def.'s Ex. 7; Lyons Aff. Ex. L.  To his second dispute letter, McKinley attached his first dispute letter and a copy of a letter from Morrow & Rose, Inc.  Def.'s Ex. 7; Lyons Aff. Ex. L.  The Morrow & Rose letter is a debt collection letter dated January 16, 2001, and informs McKinley that his Chevy Chase Bank account has been paid.  Def.'s Ex. 7; Lyons Aff. Ex. L.  The letter does not state how much money was owed on the account, or how much money McKinley paid.  Def.'s Ex. 7; Lyons Aff. Ex. L.  On July 25, 2005,

Equifax/CSC sent a second ACDV letter to SR Financial reporting McKinley's dispute. Def.'s Ex. 8. As the basis for McKinley's dispute, Equifax/CSC noted: "Disputes current balance - please update. Not his/hers. Please provide complete ID." Id. In a field entitled "FCRA Relevant Information," Equifax/CSC reported: "Claim more than 7 years. Paid in full." Id. Equifax/CSC did not send the Morrow & Rose letter to SR Financial. Fogleman Dep. (Lyons Aff. Ex. B) at 66-82. SR Financial again responded that it had verified that the account belonged to McKinley and the information was being reported accurately. Fogleman Decl. ¶ 25.

On August 17, 2005, CSC sent McKinley a second letter to inform him that its investigation of the SR Financial account was complete, it had verified that the SR Financial account belonged to McKinley, and it had verified that the account had not been paid in full. Def.'s Ex. 9. CSC continued to report the SR Financial account on McKinley's credit report. Fogleman Decl. ¶ 26. On October 4, 2005, McKinley filed the instant lawsuit.

Around the time that McKinley sent his second "Notice of Credit Dispute" letter to CSC but prior to receiving the results of CSC's second investigation, McKinley applied for a mortgage loan from Maribella Mortgage, a "sub-prime lender."[5] McKinley Dep. at 67, 84-85. McKinley knew of Maribella through his job with Water Street Mortgage. Id. at 80. McKinley applied only to Maribella for a loan. Id. at 67, 81. McKinley avers that based on his experience in the mortgage industry and conversations with representatives at various mortgage companies, he knew which mortgage companies were likely to approve his application for a loan based on his negative credit report, and there would have been "no reason" to apply to "conventional"

---

[5] Sub-prime loans have high interest rates relative to other types of loans because the lender assumes there to be high risk lending to persons with adverse items on their credit reports. Cookson Aff. (Lyons Aff. Ex. C) ¶ 5; First McKinley Aff. ¶ 6.

mortgage companies.  Id. at 67, 75-79, 86-87.  When McKinley discussed his loan application with a Maribella representative, the representative told McKinley that Maribella "would overlook the collection or the collection wouldn't impact their acceptance of the loan."  Id. at 81.  Maribella accessed McKinley's CSC credit report on July 26, 2005.  Fogleman Dep. ¶ 24; Lyons Aff. Ex. E.  McKinley ultimately received a mortgage loan from Maribella and purchased a rental property in August 2005.  McKinley Dep. at 80-81.  McKinley avers that if he had not had a collection account on his credit report, he would have received a lower interest rate on his mortgage loan from a better lender.  Id. at 86-88.

As a result of the negative account on his credit report, McKinley believes he has incurred $2,000 to $3,000 in out-of-pocket expenses.  Id. at 96.  McKinley also believes he has suffered emotional distress as a result of the reporting of the SR Financial account on his credit report in the form of insomnia, distraction, anger, short-temper, low self-worth, disappointment, disillusionment, and embarrassment.  Id. at 106-09; Second McKinley Aff. (Lyons Aff. Ex. F).

### III. DISCUSSION

**A.     Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the

nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.     Timeliness**

As an initial matter, McKinley's Opposition Memorandum [Docket No. 23] was filed untimely under the Local Rules.  See D. Minn. L.R. 7.1(b)(2).  McKinley was required to file and serve his Opposition Memorandum by January 25, 2007, but did not do so until January 31, 2007.  As a penalty for late filing, CSC asks the Court to disregard McKinley's proffered summary judgment evidence.  CSC has not brought a motion to strike.  At oral argument, McKinley's counsel asserted that his late filing was due to a technical scheduling error in his office and constituted excusable neglect.

While understanding that such scheduling errors can occur, the Court is troubled by counsel's failure to submit his Opposition Memorandum in a timely manner, especially in light of counsel's failure to notify the Court about his oversight until oral argument.  Counsel is strongly cautioned to avoid making a similar mistake in the future.  However, no penalty will be imposed on this occasion, and McKinley's summary judgment evidence will be considered.

**C.     Actual Damages**

15 U.S.C. § 1681o imposes liability on any person who negligently fails to comply with any requirement imposed under the FCRA and permits a plaintiff to recover actual damages sustained and attorney's fees.  15 U.S.C. § 1681o(a).  McKinley "bears the burden of proving actual damages sustained as a result of CSC's activities."  Graham v. CSC Credit Servs., Inc.,

306 F. Supp. 2d 873, 878-79 (D. Minn. 2004) (citing Casella v. Equifax Credit Info. Servs., 56 F.3d 469, 473 (2d Cir. 1995)). CSC argues that even presuming CSC negligently violated the FCRA by reporting the SR Financial account on McKinley's credit report and by failing to do a reasonable investigation when McKinley disputed the SR Financial account, McKinley's claims must still fail because McKinley cannot establish that CSC's actions caused McKinley any harm. CSC argues that McKinley admits that the adverse credit report did not cause him any credit denials, and that there is no admissible evidence that McKinley received a less favorable interest rate. CSC further argues that there is no evidence that McKinley's emotional distress was caused by CSC as opposed to SR Financial, and that McKinley's evidence of emotional distress is insufficient as a matter of law.

McKinley responds that he has suffered actual damages including a lower credit score, a higher interest rate, emotional damages, and out-of-pocket damages. McKinley argues that he has proffered evidence to support that he received a higher interest rate on his mortgage loan due to the adverse credit report, including testimony about his discussions with Maribella Mortgage representatives, as well as testimony from co-worker Peter Cookson and McKinley himself based on their several years of experience in the mortgage industry. McKinley also argues that he has furnished adequate evidence of his emotional distress damages based on his own specific testimony and the testimony of four corroborating witnesses. McKinley further argues that he suffered $2,000 to $3,000 in out-of-pocket damages in attorney and other legal fees.

1. **Higher Interest Rate**

McKinley does not argue that he suffered actual damages in the form of denied credit, but rather that he received a higher interest rate on his loan from Maribella Mortgage as a result

of the SR Financial account reported on his CSC credit report.  In support of this assertion, McKinley does not offer any testimony or other evidence from Maribella Mortgage to establish that Maribella Mortgage charged McKinley a higher interest rate because of the negative credit report.  Rather, McKinley offers his own sworn affidavit and that of his co-worker Peter Cookson, averring that, based on their experience in the mortgage industry, McKinley could only qualify for sub-prime loans due to the SR Financial account on his CSC credit report.  Cookson Aff.; First McKinley Aff.  The McKinley and Cookson affidavits also attach as an exhibit Maribella Mortgage rate sheets that McKinley and Cookson used to determine the rate McKinley would have qualified for absent the SR Financial account on his CSC credit report.  Cookson Aff.; First McKinley Aff.  McKinley also testified at his deposition that he discussed the SR Financial account with a man named Brian at Maribella Mortgage and that the SR Financial account "impacted the loans [he] was able to qualify for."  McKinley Dep. at 85.

     At oral argument, McKinley's counsel explained McKinley has not supplied affidavits or evidence from Maribella Mortgage employees because Maribella Mortgage has gone out of business, and so the best evidence McKinley has in support of his allegations of a higher interest rate are the McKinley and Cookson affidavits.  McKinley's counsel argued that this case presents a unique situation because McKinley is a mortgage loan officer himself; therefore, it was not necessary for McKinley to shop around for a better interest rate from other mortgage companies because McKinley knew he could only qualify for a sub-prime loan.

     Although it may be unusual that McKinley is a mortgage loan officer and as a result has a better understanding of the mortgage industry than others, McKinley's evidence in support of his allegation that he received a higher interest rate is insufficient evidence of actual damages.  To

survive summary judgment, the nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik, 47 F.3d at 957. Affidavits are to be made on personal knowledge, set forth facts that are admissible in evidence, and show affirmatively that the affiant is competent to testify to the matter stated. Fed. R. Civ. P. 56(e); Postscript Enters. v. City of Bridgeton, 905 F.2d 223, 226 (8th Cir. 1990). McKinley and Cookson have no personal knowledge that Maribella Mortgage charged McKinley a higher interest rate due to the SR Financial account on McKinley's CSC credit report because they have never been Maribella Mortgage employees. McKinley and Cookson base their averments solely on their experience in the mortgage industry, but neither McKinley nor Cookson have been designated as expert witnesses. See Pretrial Scheduling Order [Docket No. 8] (requiring McKinley to identify expert witnesses, pursuant to Fed. R. Civ. P. 26(a)(2)(A), by June 1, 2006). McKinley also testified at his deposition that no one told him that he would have qualified for a lower interest rate without the SR Financial account on his CSC credit report "[o]ther than telling myself that or determining that to my own satisfaction." McKinley Dep. at 87. However, "[m]ere speculation is not evidence of actual damages." Reed v. Experian Info. Solutions, Inc., 321 F. Supp. 2d 1109, 1115 (D. Minn. 2004) (citing Casella, 56 F.3d at 475). Accordingly, McKinley's evidence in support of a higher interest rate to show actual damages is insufficient to avoid summary judgment.

  **2. Emotional Distress Damages**

"Actual damages may include damages for humiliation or mental distress even if the consumer has suffered no out-of-pocket losses." Cousin v. Trans Union Corp., 246 F.3d 359, 369 n.15 (5th Cir. 2001); see also Casella, 56 F.3d at 474. CSC argues McKinley's evidence of

9

emotional distress damages must be evaluated using the guidance of Consolidated Rail Corporation v. Gottshall, 512 U.S. 532 (1994). In Gottshall, the Supreme Court held that "an emotional injury constitutes 'injury' resulting from the employer's 'negligence' for purposes of [Federal Employers' Liability Act] only if it would be compensable under the terms of the zone of danger test." 512 U.S. at 555. "[T]he zone of danger test limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct." Id. at 547-48.

McKinley denies Gottshall is the standard and argues the Court should apply the "genuine injury" test. Carey v. Piphus, 435 U.S. 247, 264 n.20 (1978).[6] The Carey court stated, with respect to a claim under 42 U.S.C. § 1983, that genuine injury "may be evidenced by one's conduct and observed by others." Id. The Eighth Circuit, applying the genuine injury test in a Title VII case, found that although a compensatory damage award may be based solely on a plaintiff's own testimony, the plaintiff's evidence was insufficient where she "suffered no physical injury, she was not medically treated for any psychological or emotional injury, and no other witness corroborated any outward manifestation of emotional distress." Forshee v. Waterloo Indus., Inc., 178 F.3d 527, 531 (8th Cir. 1999). Other courts have applied the genuine injury test in the context of FCRA claims. See, e.g., Cousin, 246 F.3d at 371; Murphy v. Midland Credit Mgmt., Inc., 456 F. Supp. 2d 1082, 1093 (E.D. Mo. 2006).

Regardless of which standard is applied, McKinley's evidence of emotional distress damages is insufficient as a matter of law for McKinley's claim to survive summary judgment.

---

[6] While McKinley denies that Gottshall provides the appropriate test, CSC argues that Gottshall is consistent with Carey.

In his deposition, McKinley testified that his emotional distress manifested itself in the form of insomnia, distraction, anger, a short-temper, feelings of low self-worth, disappointment, and disillusionment. McKinley Dep. at 106-09. Although he testified to physical symptoms, McKinley did not testify to any physical injury. McKinley also testified that he has not taken any medication and has not seen any physician, psychologist, or other health care professional for his emotional distress. Id. at 108. McKinley has provided four affidavits from his girlfriend, brother, friend of more than 35 years, and former co-worker who all testify to McKinley's anger, frustration, loss of sleep, and distraction allegedly caused by his credit dispute. Def.'s Exs. G-J. However, McKinley's testimony and that of his corroborating witnesses simply does not identify and describe severe emotional distress that warrants an award of actual damages.[7] See Forshee, 178 F.3d at 531. McKinley's evidence is insufficient as a matter of law, and consequently, McKinley's allegations of actual damages due to emotional distress do not survive summary judgment.

### 3. Attorney's Fees

As a final element of actual damages, McKinley claims he suffered out-of-pocket damages of $2,000 to $3,000 in attorney's fees and other litigation costs. However, 15 U.S.C. § 1681o(a)(2) provides for attorney's fees and the costs of the lawsuit only in the event of a "successful action to enforce any liability." McKinley has not yet been successful in this FCRA action, and is not entitled to attorney's fees absent the establishment of any other actual damages

---

[7] Given McKinley's experience in the mortgage industry, it can safely be assumed that he is familiar with the high frequency of information on credit reports being inaccurate. His claim for emotional distress injury predicated on the credit report would be highly subject to impeachment at trial.

sustained.  See Crabill v. Trans Union L.L.C., 259 F.3d 662, 665-66 (7th Cir. 2001).  Although the Second Circuit in Casella held "'actual damages' may include out-of-pocket expenses for attorney's fees incurred by a plaintiff *prior to litigation* of his FCRA claims," there is no evidence here that any of McKinley's $2,000 to $3,000 in attorney's fees and other legal costs were incurred for any reason other than to commence and further the instant litigation.  Casella, 56 F.3d at 474 (emphasis added).  Accordingly, McKinley's $2,000 to $3,000 in out-of-pocket expenses incurred in attorney's fees and other litigation costs do not constitute actual damages that are currently compensable under the FCRA.

In sum, McKinley has proffered insufficient evidence of actual damages occasioned by a higher interest rate, emotional distress damages, or attorney's fees.  McKinley has failed to establish the element of damages, and consequently, CSC's Motion for Summary Judgment is granted with respect to McKinley's claims for negligent violation of the FCRA.

**D.     Willfulness**

15 U.S.C. § 1681n(a) imposes civil liability on individuals who willfully fail to comply with the requirements of the FCRA and permits plaintiffs to recover punitive damages.  The Eighth Circuit has interpreted willful to require "knowing and intentional commission of an act the defendant knows to violate the law."  Phillips v. Grendahl, 312 F.3d 357, 370 (8th Cir. 2002).  Under the statute, punitive damages may be awarded even without actual damages when the violation is willful.  Bakker v. McKinnon, 152 F.3d 1007, 1013 (8th Cir. 1998).

CSC argues McKinley's claim that CSC willfully violated the FCRA fails because McKinley admitted in his deposition that he has no evidence or reason to believe CSC knowingly reported incorrect information about him.  McKinley responds that CSC's failure to

either forward or communicate the existence of the Morrow & Rose letter to SR Financial in accordance with company policy was either knowingly or recklessly in contravention of the FCRA's requirement that all relevant information regarding the dispute be provided to the creditor.  McKinley argues that CSC turned a willful blind eye to the law.

McKinley has simply failed to establish that CSC knowingly and intentionally committed an act it knew violated the FCRA.  In his deposition, McKinley admitted that in 2005, he had no reason to believe that CSC should not have accepted SR Financial's verification of McKinley's debt.  McKinley Dep. at 104.  CSC avers that it did not forward or report the Morrow & Rose letter to SR Financial because its policy was not to rely on a pay-off letter more than 90 days old.  Fogleman Dep. at 67-69; Def.'s Reply Mem. [Docket No. 31] at 12-13.  The Morrow & Rose letter is more than four years old, and while it may be evidence that McKinley paid his credit card account in full in 2001, it is not evidence that his credit card account is paid in full today.  CSC could reasonably conclude that McKinley's four year old letter from a different creditor was not relevant information to forward to SR Financial.  Although CSC knowingly and intentionally decided not to forward the Morrow & Rose letter to SR Financial, there is no evidence that CSC knew its decision violated the FCRA.  Accordingly, McKinley's willfulness claim fails as a matter of law, and CSC is entitled to summary judgment.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant CSC Credit Services, Inc.'s Motion for Summary Judgment [Docket No. 16] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


  s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: May 10, 2007.